SHAW (OREGON & W. T. INV. CO. v.). See Cases Nos. 10,556 and 10,557.

SHAW (SCHUBERTH v.). See Case No. 12,-482.

---

## Case No. 12,723.

### SHAW et al. v. SCOTTISH COMMERCIAL INS. CO.

[2 Hask. 246.] [1]

Circuit Court, D. Maine. Sept., 1878.

INSURANCE — FIRE — LOSS — EXAMINATION OF ASSURED—PROOF OF LOSS—FRAUD—SETTING ASIDE VERDICT.

1. The examination of an assured who claims loss by fire under an insurance policy, stipulating that he "shall, if required, submit to an examination under oath by any person appointed by the company, and subscribe thereto when reduced to writing," should be written by a disinterested magistrate, and not by the agent of the company.

2. Such examination, taken at a late hour of night, when the assured is unwell, and written by the agent of the company, carries with it a suspicion that it may not fairly state the whole truth.

3. A verdict will be set aside, when the jury appears to have been influenced by passion, or prejudice, or unwittingly to have fallen into a plain mistake; but it will not be set aside because it does not accord with the views of the court.

4. Falsehood and fraud by an assured in his proof of loss required by a policy of fire insurance, containing the usual provision that such fraud shall invalidate the policy, bar his suit upon the policy, and when proved upon the trial, require the court to set aside any verdict in favor of the assured.

Assumpsit [by E. M. Shaw and others, assignees, against the Scottish Commercial Insurance Company] upon a policy of insurance against fire brought by the assignee in bankruptcy of Joseph F. Clements. The cause was tried upon the general issue, and a verdict was rendered for the plaintiffs. The defendant moved for a new trial because the verdict was against law and evidence.

George F. Holmes and Almon A. Strout, for plaintiff.

Orville D. and Joseph Baker, for defendant.

FOX, District Judge. By their policy, issued by their agent, I. W. Clapp of Augusta, the defendant insured Clements in the sum of $4500 on his stock of dry and fancy goods contained in the store in Bunker block, North Anson, for the term of one year from June 5, 1876.

On the 19th of June, 1876, a fire occurred which consumed nearly the entire stock; and this action was commenced February 27, 1877, upon said policy, Clements having filed

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

his petition in bankruptcy October 30th. The jury having rendered a verdict in favor of the plaintiffs for the full amount insured, the defendant now moves for a new trial.

At the trial it was contended by the defendant that the property was wilfully destroyed by Clements; and much testimony was produced at the hearing by both parties bearing upon this point of the defense. The jury having by their verdict declared that the evidence did not satisfy them that Clements was guilty of this crime, it is sufficient, for the purpose of this investigation, to say that the court concurs with the jury in their so finding, and that in the opinion of the court there was not sufficient evidence to authorize the jury to render their verdict for the defendant upon this branch of the case. Suspicious circumstances were established which fully authorized an investigation; but they were not so conclusive as to justify the jury in saying that the property was wilfully destroyed by the insured.

Another ground of defense was, that the insured, in his proof of loss, had been guilty of fraud and wilful falsehood with the intent to deceive the company; and that by one of the provisions found in the policy, "all fraud, or attempt at fraud, by false swearing or otherwise, shall cause a forfeiture of all claim on this company under this policy." By the eighth condition in the policy, it was stipulated that "the assured shall render a particular account of the loss, signed and sworn to by him, and if required, submit to an examination under oath by any person appointed by the company, and subscribe thereto when reduced to writing; shall produce his books of account and other vouchers, and shall also produce certified copies of all bills and invoices, the originals of which have been lost."

The insured furnished, August seventeenth, a statement in detail of the property destroyed, estimated at $6510, and, on September thirteenth, a written disclosure was made by Clements at the request of one Winterton, a special agent of the defendant. This examination or disclosure was quite irregular, and was not taken in the presence of a magistrate; but, as I fear, was conducted by Winterton, not so much in the cause of justice to discern the real facts, as to entrap the party into such statements as might prove beneficial to his employers.

An examination of this nature should take place at reasonable hours, in the presence of a magistrate, by whom the questions and answers should be reduced to writing in the presence of the parties, and not in the small hours of the night, when the party is unwell, and when both questions and answers are written by the agent of the company. Such examinations are always to be received with suspicion as to their truthfulness; and a court of justice will always be inclined to repose much less reliance in their correctness, when thus conducted, than they would when

completed in the presence of an intelligent, disinterested magistrate.

In this examination of Clements, the court does not feel that entire confidence can be reposed as a full and truthful record of all the statements made by Clements at the time, and will not therefore rely upon it in deciding upon the rights of the parties, except so far as it is corroborated by other testimony.

All the presumptions are in favor of the verdict; and courts are quite reluctant to interfere and order a new trial, because the verdict is against the weight of evidence. It is by no means sufficient to justify the court in so doing, that the verdict was not in accordance with the judgment of the court at the trial; but it must, according to the well established rules in this court, appear that in coming to the result, the jury were influenced by passion, or prejudice, or unwittingly fell into a plain mistake. Wilkinson v. Greely [Case No. 17,671].

In the present instance, the court is apprehensive that the jury were thus prejudiced by a different ground of defense presented by the defendant. It claimed that the insured deliberately set fire to and destroyed his store and contents. In the opinion of the court, this matter was unduly urged upon the jury, as there were at most, only circumstances of suspicion, without evidence to establish the guilt of Clements. By endeavoring to thus convince the jury on such slight evidence, it may well be, the sympathy of the jury was excited in Clements' behalf; and finding nothing to justify this branch of the defendant's cause, a prejudice was thereby excited against the defendant in the minds of the jury, and they were led not to regard the testimony upon the other branch of the case and give it that consideration to which it was most clearly entitled. It can not be denied, that, by both counsel and court, their minds were distinctly drawn to its consideration: but it is perfectly apparent that it must have been utterly disregarded.

In repeated instances, amounting to more than a score, were the amounts claimed by Clements in his proof of loss demonstrated, by his own evidence, to be false, any one of which, if the jury had allowed it its legal effect, must have compelled the jury to find their verdict for the company; but all of them were overlooked, and damages were assessed by the jury nearly double in amount of the fair cash value of the property destroyed, as the court is now inclined to believe, after a somewhat extended examination of the documentary evidence.

A verdict ought to be, as the name implies, the very enunciation of truth; but it is not always so. It is frequently bottomed upon a superficial and partial examination of the testimony, and announces a result directly repugnant to the evidence as a whole. It is then a verdict against the evidence, and calls for the interposition of the court. To permit it to remain would be to sanction injustice,

and to deny the court the power to correct the flagrant abuses of the jury, would be to bring the administration of justice into contempt, and render the boasted trial by jury a great public evil.

In the opinion of the court, the verdict in the present case was largely in excess of the value of the property insured, which was destroyed; and the insured is shown to have been guilty of fraud in attempting to establish his loss, which, by the terms of the policy, should defeat any recovery. It is, therefore, the imperative duty of the court to order a new trial, that the case may be submitted to another jury for their examination. Motion sustained. New trial granted.